# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| TANNER HIRSCHFELD, *et al.*,<br><br>    *Plaintiffs*,<br><br>          v.<br><br>THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*,<br><br>    *Defendants*. | Civil Action No. 3:18-CV-00103 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

JOSEPH H. HUNT
Assistant Attorney General

JOHN TYLER
Assistant Director

*/s/ Daniel D. Mauler*
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Counsel for Defendants*

# TABLE OF CONTENTS

I.     Summary of Argument ........................................................................................................1

II.     Background ........................................................................................................................2

    A.     Statutory Background. ................................................................................................2

    B.     Regulatory Background. .............................................................................................5

III.     Argument............................................................................................................................6

    A.     The Second Amendment allows the government to regulate the commercial sale of handguns to people under the age of 21....................................................6

    B.     Plaintiffs' Due Process claim fails because age is not a suspect classification under the Equal Protection Clause. ...................................................12

IV.     Conclusion........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Williams,*
104 N.E. 659 (Ill. 1914) ...................................................................................8

*Bassett v. Bassett,*
521 P.2d 434 (Okla. Civ. App. 1974) ................................................................8

*Biffer v. City of Chicago,*
116 N.E. 182 (1917) .......................................................................................10

*Blackard v. Blackard,*
426 S.W.2d 471 (Ky. 1968) ...............................................................................8

*Bullock v. Sprowls,*
54 S.W. 657 (Tex. Civ. App. 1899) ...................................................................8

*Burgett v. Barrick,*
25 Kan. 526 (Kan. 1881) ...................................................................................8

*Castner v. Walrod,*
83 Ill. 171 (Ill. 1876) ........................................................................................8

*Coleman v. State,*
32 Ala. 581 (1858) ..........................................................................................10

*Crouch v. Crouch,*
187 S.E.2d 348 (N.C. Ct. App. 1972) ...............................................................8

*District of Columbia v. Heller,*
554 U.S. 570 (2008) .................................................................................*passim*

*Doe v. Archdiocese of Milwaukee,*
700 N.W.2d 180 (Wis. 2005) ............................................................................8

*Fitz-Gerald v. Bailey,*
58 Miss. 658 (Miss. 1881) .................................................................................8

*Gabree v. King,*
614 F.2d 1 (1st Cir. 1980) ...............................................................................13

*Horsley v. Trame,*
808 F.3d 1126 (7th Cir. 2015) .........................................................................12

*Jones v. Wells,*
2 Houst. 209 (Del. Super. Ct. 1860) ................................................................8

*Kimel v. Fla. Bd. of Regents,*
   528 U.S. 62 (2000) ...................................................................12, 13, 14

*Mass. Bd. of Ret. v. Murgia,*
   427 U.S. 307 (1976) ......................................................................12

*McDonald v. City of Chicago,*
   130 S. Ct. 3020 (2010) ............................................................ 6, 12

*Memphis Trust Co. v. Blessing,*
   58 S.W. 115 (Tenn. 1899) ..............................................................8

*Nat'l Rifle Ass'n. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
   700 F.3d 185 (5th Cir. 2012) ..................................................... 1, 12

*Nat'l Rifle Ass'n v. Brady,*
   914 F.2d 475 (4th Cir. 1990) ..........................................................5

*Parman v. Lemmon,*
   244 P. 227 (Kan. 1925) ................................................................10

*Peters v. Jones,*
   35 Iowa 512 (1872) .......................................................................8

*Reisse v. Clarenbach,*
   61 Mo. 310 (1875) ........................................................................8

*Republican Party of Minn.* v. *White,*
   536 U.S. 765 (2002) ......................................................................7

*State v. Callicutt,*
   69 Tenn. 714 (1878) ....................................................................10

*United States v. Emerson,*
   270 F.3d 203 (5th Cir. 2001) .................................................... 11, 12

*United States v. Moore,*
   84 F.3d 1567 (9th Cir. 1996) .........................................................11

*United States v. Olson,*
   473 F.2d 686 (8th Cir. 1973) .........................................................13

*Walker v. Walker,*
   17 Ala. 396 (1850) ........................................................................8

*Whitt v. Whitt,*
   490 S.W.2d 159 (Tenn. 1973) ........................................................8

*Womack v. Greenwood*,
   6 Ga. 299 (1849) ........................................................................................................8

**Constitution**

ALA. CONST. art. I, § 26 (1819) ...................................................................................10

**Statutes**

18 U.S.C. § 922(a)(1) ....................................................................................................3

18 U.S.C. § 922(a)(21) ..................................................................................................3

18 U.S.C. § 922(a)(21)(C) .............................................................................................3

18 U.S.C. § 922(b)(1) ............................................................................................*Passim*

18 U.S.C. § 922(c) .........................................................................................................1

18 U.S.C. § 922(c)(1) ...........................................................................................3, 4, 11

18 U.S.C. § 922(x) .........................................................................................................4

18 U.S.C. § 926(a) .........................................................................................................5

Pub. L. No. 90-351, 82 Stat. 197 (1968) ................................................................ 2, 3

Pub. L. No. 90-618, 82 Stat. 1213 (1968) ...................................................................3

Pub. L. No. 103-322, 108 Stat. 1796 (1994) ..............................................................4

**Regulations**

27 C.F.R. § 478.124(a) ............................................................................................ 1, 5

27 C.F.R. § 478.124(c)(1) .............................................................................................5

27 C.F.R. § 478.96(b) .............................................................................................. 1, 5

27 C.F.R. § 478.124(f) ..................................................................................................5

27 C.F.R. § 478.99(b) ...................................................................................................5

**Legislative Materials**

114 Cong. Rec. 12279 (1968) ................................................................................ 2, 4

Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary, 89th Cong. 67 (1965) ....................................................................3

Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary, 90th Cong. 57 (1967) ....................................................................2

S. Rep. No. 88-1340 (1964) .........................................................................................................2

S. Rep. No. 89-1866 (1966) .........................................................................................................3

S. Rep. No. 90-1097 (1968) ...................................................................................................*Passim*

## Other Authorities

Black's Law Dictionary (9th ed. 2009) ........................................................................................7

T.E. James, *The Age of Majority*,
    4 Am. J. Legal Hist. (1960) ....................................................................................................7

Thomas M. Cooley*, Treatise on Constitutional Limitations* (5th ed. 1883) ...................................10

Op. of Kentucky Att'y Gen. 94-14 (March 3, 1994) . ..................................................................10

Vivian E. Hamilton , *Adulthood in Law and Culture*,
    91 Tulane L. Rev. (2016) ........................................................................................................7

WILLIAM BLACKSTONE, 1 COMMENTARIES ON THE LAWS OF ENGLAND (1st ed. 1765) ......................7

Defendants, The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); Thomas E. Brandon, in his official capacity as the Deputy and Acting Director of ATF; and William P. Barr, in his official capacity as Attorney General of the United States (collectively, the "Defendants"), submit this memorandum in support of their motion to dismiss the Complaint in this matter.

## I.        Summary of Argument

Plaintiffs – two individuals under the age of 21 – challenge the constitutionality of federal criminal statutes making it unlawful for federal firearms licensees ("FFLs") to sell handguns and handgun ammunition to persons under 21 years of age, 18 U.S.C. §§ 922(b)(1), (c), and federal regulations implementing those statutory provisions, 27 C.F.R. §§ 478.99(b)(1), 478.124(a), 478.96(b).  Plaintiffs claim that these statutes and regulations violate their Second Amendment rights to keep and bear arms, and also violate their Fifth Amendment rights to equal protection of the law. Plaintiffs' claims fail as a matter of law and must be dismissed.

Plaintiffs' Second Amendment claims fail as a matter of history and tradition.  Traditionally, the government has enjoyed the power to prohibit people under the age of 21 from possessing firearms.  Indeed, when the Second Amendment was adopted, the age of majority at common law was 21.  Thus, as the Fifth Circuit held in *Nat'l Rifle Ass'n. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*NRA*"), restrictions on the commercial sale of handguns to those under the age of 21 do not violate the Second Amendment.  Similarly, Plaintiffs' Fifth Amendment claims fail because age is not a suspect class for equal protection analysis in this context.

## II.    Background

### A.  Statutory Background.

Following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), Congress found "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225. The legislative record established that "juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category." S. Rep. No. 90-1097, at 77 (1968). "[M]inors under the age of 21 years accounted for 35 percent of the arrests for the serious crimes of violence including murder, rape, robbery, and aggravated assault," and 21 percent of the arrests for murder. 114 Cong. Rec. 12279, 12309 (1968) (Sen. Dodd).

Based on its investigations, Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior[.]" Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 225-26. Federal law enforcement officials testified that "[t]he greatest growth of crime today is in the area of young people, juveniles and young adults" and that "[t]he easy availability of weapons makes their tendency toward wild, and sometimes irrational behavior that much more violent, that much more deadly . . ." *Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary*, 90th Cong. 57 (1967) ("Firearms Act: 1967 Hearings") (testimony of Sheldon S. Cohen).  Law enforcement officers from New York City, Los Angeles, St. Louis, Chicago, Philadelphia, and Atlanta provided Congress with "statistics documenting the misuse of firearms by juveniles and minors," which "take on added

significance when one considers the fact that in each of the jurisdictions referred to the lawful acquisition of concealable firearms by these persons was prohibited by statute." S. Rep. No. 89-1866, at 59 (1966); *see also id.* at 58, 60.

Congress's investigations revealed that "almost all of these firearms[] are put into the hands of juveniles by importers, manufacturers, and dealers who operate under licenses issued by the Federal Government." *Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary*, 89th Cong. 67 (1965) ("Firearms Act: 1965 Hearings") (testimony of Sheldon S. Cohen). Congress thus concluded that concealable firearms (such as handguns) "have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior," Pub. L. No. 90-351, Title IV, § 901(a)(6), 82 Stat. 226, and "that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible," *id.* § 901(a)(3), 82 Stat. at 225.

To that end, Congress included statutory provisions designed to address "[t]he clandestine acquisition of firearms by juveniles and minors," S. Rep. No. 90-1097, at 79, in both the Omnibus Crime Control Act and the Gun Control Act of 1968, Pub. L. No. 90-618, Title I, § 101, 82 Stat. 1213. These provisions include 18 U.S.C. §§ 922(b)(1) and (c)(1), which regulate the sale of firearms by FFLs to persons under 21 years old.[1]

---

[1] A federal firearms license is required to "engage in the business of importing, manufacturing, or dealing in firearms [or ammunition]." 18 U.S.C. § 922(a)(1). A person is "engaged in the business" of dealing firearms, *id.* § 921(a)(21), if that person "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit," *id.* § 921(a)(21)(C).

While federal law sets a minimum age of 18 to purchase shotguns or rifles from FFLs, the minimum age to purchase handguns from FFLs is 21. Section 922(b)(1) provides that FFLs may sell or deliver only "a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age" but above eighteen. 18 U.S.C. § 922(b)(1). FFLs may not sell or deliver "any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age." *Id.* Section 922(c)(1) provides that an FFL may not "sell a firearm to [an unlicensed] person who does not appear in person at the licensee's business premises" unless "the transferee submits to the transferor a sworn statement" attesting "that, in the case of any firearm other than a shotgun or a rifle, [the transferee is] twenty-one years or more of age, or that, in the case of a shotgun or a rifle, [the transferee is] eighteen years or more of age." *Id.* § 922(c)(1).

Importantly, federal law does not prohibit the *possession* of handguns by 18 to 20 year olds. Congress recognized that, under these provisions, "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. No. 90-1097, at 79. "At the most," therefore, these provisions "could cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. at 12309 (Sen. Dodd). Congress subsequently limited the circumstances under which individuals under 18 years old may possess handguns, but has not placed any similar age-related limits on the possession of handguns by individuals between 18 and 20 years old. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XI, § 110201, 108 Stat. 1796, 2010 (adding 18 U.S.C. § 922(x)).

## B. Regulatory Background.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is authorized to issue "such rules and regulations as are necessary to carry out" Title 18's provisions relating to firearms. 18 U.S.C. § 926(a); *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 477 (4th Cir. 1990) ("The Secretary of the Treasury was authorized to promulgate regulations to facilitate the enforcement of the Gun Control Act" and "[t]his responsibility was delegated within the Department of the Treasury to the Bureau of Alcohol, Tobacco and Firearms.").

The implementing regulations promulgated by ATF include 27 C.F.R. § 478.99(b), which closely tracks Congress's limitations on commercial sales of firearms to persons under 21 years of age, 18 U.S.C. § 922(b)(1).[2] ATF has also provided that FFLs "shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any [transferee who is not federally licensed] unless the licensee records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a); *see also* 27 C.F.R. § 478.96(b) (imposing same restrictions with respect to out-of-state and mail order sales). The Form 4473 establishes the transferee's eligibility to possess a firearm by recording, among other things, the transferee's "date and place of birth," 27 C.F.R. § 478.124(c)(1), and the transferee's certification that if "the firearm to be transferred is a shotgun or rifle, the transferee is 18 years or more of age," and if "the firearm to be transferred is a firearm other than a shotgun or rifle, the transferee is 21 years or more of age," *id.* § 478.124(f).

ATF applies these implementing regulations consistently with Congress's understanding that "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a]

---

[2] The regulation at 27 C.F.R. § 478.99(b) provides that a federal firearm licensee "shall not sell or deliver (1) any firearm or ammunition to any individual who the [licensee] knows or has reasonable cause to believe is less than 18 years of age" or (2) any firearms "other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the [licensee] knows or has reasonable cause to believe is less than 21 years of age . . ."

firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. No. 90-1097, at 79. Accordingly, ATF has explained that a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm. Opinion of the Chief Counsel of ATF, No 23362 (Dec. 5, 1983) (hereinafter the "ATF Opinion Letter" and attached as Ex. A).

### III.   Argument

#### A.  The Second Amendment allows the government to regulate the commercial sale of handguns to people under the age of 21.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court determined that the Second Amendment guaranteed an individual right to keep and bear arms, but noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626.  The Court provided a non-"exhaustive" list of "presumptively lawful regulatory measures," including "laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27 & n.26. The Court "made it clear in *Heller* that [its] holding did not cast doubt" on such measures and "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010) (plurality).

*Heller* establishes that a court should rely principally on text and history to discern the limits of the right to keep and bear arms. For example, bans on "dangerous and unusual weapons" are constitutional because there is a "historical tradition of prohibiting the carrying" of such weapons. 554 U.S. at 627. Bans on possession of firearms by felons are constitutional because they are "longstanding." *Id.* at 626.  And regulations of the carrying of firearms in "sensitive places" are constitutional because they have "historical justification[s]." *Id.* at 626, 635.

*Heller* further establishes that a court's examination of history should not end in 1791. The Court described "examination of a variety of legal and other sources to determine the public understanding of [the] legal text in the period after its enactment or ratification" as "a critical tool of

constitutional interpretation. *Id.* at 605 (emphasis omitted). The Court thus examined "[p]ostratification commentary," "[p]re-Civil War [c]ase [l]aw," "[p]ost-Civil War [l]egislation," and "[p]ost-Civil War [c]ommentators" to determine the original meaning of the Second Amendment. *Id.* at 605-26. These post-ratification traditions matter because "[p]rinciples of liberty fundamental enough to have been embodied within constitutional guarantees are not readily erased from the Nation's consciousness." *Republican Party of Minn.* v. *White*, 536 U.S. 765, 785 (2002) (citation omitted). The widespread adoption of a type of regulation, even after the founding, thus creates a "strong presumption" that the regulation is constitutional. *Id.* (citation omitted).

These principles are decisive here. First, the "historical background of the Second Amendment," *Heller*, 554 U.S. at 592, strongly suggests that governments may restrict the purchase of firearms by people under the age of 21. At the time of the adoption of the Constitution, the age of majority at common law was 21 years. *See, e.g.*, WILLIAM BLACKSTONE, 1 COMMENTARIES ON THE LAWS OF ENGLAND 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years, which age is completed on the day preceding the anniversary of a person's birth; who till that time is an infant, and so styled in law."); BLACK'S LAW DICTIONARY 847 (9th ed. 2009) ("An infant in the eyes of the law is a person under the age of twenty-one years, and at that period . . . he or she is said to attain majority . . . .").[3] That background suggests that the Second Amendment allowed the government to use 21 as the cutoff for possession of arms.

---

[3] The tradition of designating 21 years of age as the "age of majority" can be traced in England as far back as the time of Magna Carta, at least for men in knight service, and that the "choice of this age evolved . . . owing to the weight of the arms and the greater skill required in warfare." *See* T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22, 26, 30 (1960). "Perhaps unsurprisingly, the age required for the elite status of knighthood was the age whose imprint would endure. English historical and common law traditions became law throughout the British Commonwealth. Twenty-one remained the age of majority for centuries in England, as well as throughout much of the Western world and nations that incorporated English traditions." Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tulane L. Rev. 55, 64 (2016).

Second, laws prohibiting people under the age of 21 from purchasing firearms are "longstanding," *Heller*, 554 U.S. at 626. During the nineteenth century, nineteen States and the District of Columbia enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of "minors" while the state's age of majority was set at 21. *See* Ex. B (chart reproducing State laws).[4] Twelve of these States and the District of Columbia had Second Amendment analogues in their respective constitutions when they enacted these qualifications. *See id.*[5] By the early twentieth century, three more States restricted the purchase or use of particular firearms by individuals below 21 years of age, and two of these states had Second Amendment analogues in their constitutions. *See id.*[6] Thus, by 1923, a total of twenty-two States and the District of Columbia had made 21 the minimum age for purchase or use of particular firearms,

_____

[4] Alabama (1856), Tennessee (1856), Kentucky (1873), Indiana (1875), Georgia (1876), Mississippi (1878), Missouri (1879), Delaware and Illinois (1881), Maryland and West Virginia (1882), Kansas and Wisconsin (1883), Iowa (1884), Nevada (1885), Louisiana (1890), Wyoming (1890), District of Columbia (1892), North Carolina (1893), and Texas (1897). *See* Ex. B.

For states that prohibited purchase or possession of firearms by "minors" and set the age of majority at 21, *see Walker v. Walker*, 17 Ala. 396 (Ala. 1850); *Jones v. Wells*, 2 Houst. 209 (Del. Super. Ct. 1860); *Womack v. Greenwood*, 6 Ga. 299 (Ga. 1849); *Peters v. Jones*, 35 Iowa 512 (Iowa 1872); *Burgett v. Barrick*, 25 Kan. 526 (Kan. 1881); *Blackard v. Blackard*, 426 S.W.2d 471, 472 (Ky. 1968); *Fitz-Gerald v. Bailey*, 58 Miss. 658 (Miss. 1881); *Crouch v. Crouch*, 187 S.E.2d 348, 349 (N.C. Ct. App. 1972); *Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973); *Memphis Trust Co. v. Blessing*, 58 S.W. 115, 117 (Tenn. 1899); *Bullock v. Sprowls*, 54 S.W. 657, 659-60 (Tex. Civ. App. 1899); *Doe v. Archdiocese of Milwaukee*, 700 N.W.2d 180, 188 (Wis. 2005). Until the 1970s, Illinois, Missouri, and Oklahoma set the age of majority at twenty-one for men, and eighteen for women. *See Castner v. Walrod*, 83 Ill. 171 (Ill. 1876); *Anderson v. Williams*, 104 N.E. 659, 661 (Ill. 1914); *Reisse v. Clarenbach*, 61 Mo. 310 (Mo. 1875); *Bassett v. Bassett*, 521 P.2d 434, 435 n.2 (Okla. Civ. App. 1974).

[5] Alabama, Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Tennessee, Texas, and Wyoming. *See* Ex. B. Because the District of Columbia is a federal enclave, it is directly constrained by the Second Amendment.

[6] Oklahoma (law enacted in 1890, Oklahoma admitted as a State in 1907), New Hampshire (1923), and South Carolina (1923). Oklahoma and South Carolina have State constitutional provisions protecting the right to bear arms. *See* Ex. B.

and fourteen of these States (and the District of Columbia) had State constitutional analogues to the

Second Amendment. *See id.*; *supra*, notes 4-6. Within the same time-frame (mid-nineteenth century

through early twentieth century) twenty-one other States imposed age qualifications on the purchase

or use of certain firearms, setting the minimum age between twelve and twenty. *See* Ex. B.[7]

This tradition continues into the present day. At present, all fifty States and the District of

Columbia have minimum-age qualifications for the use or purchase of particular firearms. *See* Ex. B;

*see also supra*, notes 4-6. And at the time that these minimum-age qualifications were enacted, thirty-

five of the fifty States (and the District of Columbia) had constitutional provisions securing the right

to keep and bear arms. *See id.*[8] Twenty-nine of the fifty States (and the District of Columbia) only

placed a minimum-age qualification on the purchase or use of handguns – usually defined as pistols,

revolvers, or other concealable firearms. *Id.*[9]

Third, "19th-century cases," *Heller*, 554 U.S. at 610, also support the authority of the

government to restrict firearms purchases by people under the age of 21. For example, the Supreme

Court of Tennessee, a State that prohibited the sale of pistols to minors and set the age of majority

at 21, *see supra* note 4, upheld a conviction for selling a pistol to a minor against a challenge brought

---

[7] Oregon (1868), Ohio (1880), Florida and Pennsylvania (1881), New Jersey (1882), Michigan, New York, and Rhode Island (1883), Washington (enacted 1883, admitted as a State in 1889), Massachusetts (1884), Minnesota and Virginia (1889), Vermont (1896), South Dakota (1903), Utah (1905), Montana (1907), Idaho and Maine (1909), Arizona (enacted 1883, admitted as a State in 1912), California and Connecticut (1923). *See* Ex. B.

[8] Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Wyoming.

[9] Alabama, California, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

under the state's Second Amendment analogue, expressly rejecting the defendant's argument "that every citizen who is subject to military duty has the right 'to keep and bear arms,' and that this right necessarily implies the right to buy or otherwise acquire, and the right in others to give, sell, or loan to him." *State v. Callicutt*, 69 Tenn. 714, 716-17 (1878). The court explained that the challenged restrictions "were not intended to affect, and do not in fact abridge, the constitutional right of the 'citizens of the State to keep and bear arms for their common defense,' but have been passed with a view 'to prevent crime.'" *Id.* The court stated that "we regard the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor, not only constitutional as tending to prevent crime but wise and salutary in all its provisions." *Id.* A conviction for violating a state law "which makes it a misdemeanor to 'sell, or give, or lend, to any male minor,' a pistol" was likewise upheld by the Supreme court of Alabama, *Coleman v. State*, 32 Ala. 581, 582 (1858), a State that set the age of majority at 21, *supra* note 4, and provided in its constitution "[t]hat every citizen has a right to bear arms in defense of himself and the state," ALA. CONST. art. I, § 26 (1819).[10]

Fourth, 19th century "legal scholar[s]," *Heller*, 554 U.S. at 616, wrote that restrictions on the ability of minors to purchase firearms were permissible. "The judge and professor Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations," *id.*, included among the permissible exercises of State police power "[t]hat the State may prohibit the sale of arms to minors." Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883)). Professor

---

[10] *See also* Op. of Kentucky Att'y Gen. 94-14 (March 3, 1994) ("Given the Commonwealth's history of restricting the access of minors to deadly weapons, it is not unreasonable to conclude that the Kentucky constitutional provision recognizing a right to bear arms has no application to minors" and that "[i]f the right to bear arms does extend to minors, it likely is a more limited right than that possessed by adults"); *Parman v. Lemmon*, 244 P. 227, 228 (Kan. 1925) (rejecting constitutional challenge to provision prohibiting sale and possession of "dangerous weapons to minors," including "any pistol, revolver or toy pistol," in an action alleging that violation of the statute was negligence per se); *Biffer v. City of Chicago*, 116 N.E. 182, 184-85 (1917) (city ordinance denying concealable weapons permit to "all minors" did not violate the federal or state constitutional right to bear arms).

Cooley perceived no inconsistency between these age qualifications on sales and the fact that "State constitutions," like the federal constitution, "provide that the right of the people to bear arms shall not be infringed." *Id.* at 429; *see also Heller*, 554 U.S. at 616-17 (treating Cooley's interpretations of the Second Amendment as persuasive authority); *United States v. Emerson*, 270 F.3d 203, 235-36, 258- 59 (5th Cir. 2001) (same).

Here, of course, Congress has not categorically prohibited people under the age of 21 from possessing firearms. Indeed, although plaintiffs allege that the challenged federal laws burden their "fundamental right to keep and bear arms," Compl., ¶ 1, ECF No. 1, they do not demonstrate that they in fact are unable to possess firearms. Plaintiffs may lawfully possess handguns and ammunition under federal law, primarily through their parents or legal guardians, as contemplated by Congress. Sections 922(b)(1) and (c)(1) regulate only commercial sales of firearms and ammunition to persons under the age of 21. *See* ATF Opinion Letter, at 3.[11] Congress has merely restricted commercial sales of handguns to people younger than 21-years-old. History and tradition confirm Congress' authority to adopt such a regulation.[12]

---

[11] As Congress recognized, these laws do not bar other channels of firearm acquisition by persons who are 18 to 20 years old. Nor do they prohibit such persons from possessing firearms, including handguns. *See, e.g.*, S. Rep. No. 90-1097, at 79. ATF has thus made clear that these laws "were intended to prevent juveniles from acquiring firearms without their parents' or guardian's knowledge," not to prohibit them "from possessing, owning, or learning the proper usage of firearms." ATF Opinion Letter, at 3-4.

[12] ATF has explained that if "the actual purchaser, a person of legal age, is acquiring the firearm for the purpose of loaning or giving it to an underaged person[,] [n]either the *sale* nor the minor's subsequent receipt and possession of the firearm would violate Federal law, provided that the person is not otherwise disabled" from possessing a firearm. ATF Opinion Letter, at 4 (emphasis in original). Thus, for example, a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm. *See id.* Indeed, as the Ninth Circuit has noted, it is not illegal for a parent to buy a gun for his or her child even if "the child's own money" is used to make the purchase. *United States v. Moore*, 84 F.3d 1567, 1571 (9th Cir. 1996).

Other courts have found this historical evidence decisive. For example, when the Fifth Circuit faced claims substantively identical to the claims in this case, the court rejected those claims against this backdrop of *Heller* and *McDonald*. "Modern restrictions on the ability of persons under 21 to purchase handguns . . . seem, to us, to be firmly historically rooted." *NRA*, 700 F.3d at 204. The Fifth Circuit's rejection of these claims was validated three years later by the Seventh Circuit in *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015). This result was consistent with the case law on the subject prior to *Heller*. *See, e.g., Emerson*, 270 F.3d at 261("[I]t is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms.").

### B. Plaintiffs' Due Process claim fails because age is not a suspect classification under the Equal Protection Clause.

In addition to their Second Amendment claim, Plaintiffs also argue that the challenged statutes and regulations violate their "right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment to the United States Constitution." Compl., ¶ 43; *see generally id.* at Count II. As with the Plaintiffs' Second Amendment claim, the Fifth Circuit has already considered and rejected a substantively identical claim brought by similar plaintiffs under 21-years-old. *See NRA*, 700 F.3d at 211-12. Because age is not a suspect classification under these circumstances, the claim fails again as a matter of law.

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Strict scrutiny is not triggered here because plaintiffs have not established an impermissible interference with their Second Amendment rights and because "age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000)).

"Age classifications, unlike governmental conduct based on race or gender, cannot be characterized as so seldom relevant to the achievement of any legitimate state interest that laws

grounded in such considerations are deemed to reflect prejudice and antipathy." *Id.* at 83 (citation

omitted). Thus, the government "may discriminate on the basis of age without offending" the

constitutional guarantee of equal protection "if the age classification in question is rationally related

to a legitimate state interest." *Id.*

Where age classifications are concerned, "[t]he rationality commanded by the Equal

Protection Clause does not require States to match age distinctions and the legitimate interests they

serve with razorlike precision." *Id.* at 83. Accordingly although "[r]acial classifications are

constitutional only if they are narrowly tailored measures that further compelling governmental

interests," *id.* at 84 (citation omitted), and "gender classifications are constitutional only if they serve

important governmental objectives and the discriminatory means employed are substantially related

to the achievement of those objectives," *id.* (citation omitted), the government "may rely on age as a

proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate

interests," *id.*

"The Constitution does not preclude reliance on such generalizations," *id.*, "even if it is

probably not true that those reasons are valid in the majority of cases," *id.* at 86 (internal quotation

marks omitted). "That age proves to be an inaccurate proxy in any individual case is irrelevant." *Id.*

at 84.[13]

---

[13] Thus, for example, legislatures have traditionally had broad discretion to prescribe minimum age limits for the exercise of the different privileges and rights that collectively constitute adulthood, and to raise and lower those limits as long as there is a rational basis for the legislature's decisions. *See, e.g.*, *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (recognizing that "eighteen to twenty-one year olds have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," and rejecting equal protection challenge to a state law raising the drinking age to twenty-one); *United States v. Olson*, 473 F.2d 686, 687-88 (8th Cir. 1973) (upholding prior version of federal law setting 21 as the age for jury service after Congress amended law to lower the minimum age for jury service to 18).

Consequently, courts will not overturn age classifications unless they are "so unrelated to the achievement of any combination of legitimate purposes" that one "can only conclude that the government's actions were irrational." *Id.* (citation omitted). And "because an age classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation omitted).

In light of the legislative record described above, Congress's decision to restrict handgun purchases by individuals under 21 was not irrational. Nor can plaintiffs meet their burden of showing that the age qualifications that Congress decided to impose on commercial handgun purchases were based on facts that "could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation omitted). Plaintiffs' equal protection claims therefore fail.

## IV.     Conclusion

Because the challenged regulations do not violate the Second Amendment or the Fifth Amendment, Defendants respectfully request that the Court dismiss the Complaint in this matter.

Dated:  April 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN TYLER
Assistant Director

*/s/ Daniel D. Mauler*
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on April 10, 2019, a true and accurate copy of the

foregoing was electronically filed with the CM / ECF system, which will send a Notice of Electronic

Filing to all counsel of record in this matter.

*/s/ Daniel D. Mauler*
Daniel D. Mauler
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Counsel for Defendants*