CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 04 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TANNER HIRSCHFELD AND NATALIA MARSHALL<br><br>Plaintiffs<br><br>v.<br><br>THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, ET AL.,<br><br>Defendants | Civil Action No. 3:18CV00103<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>Senior United States District Judge |

Plaintiffs Tanner Hirschfeld and Natalia Marshall (the "Prospective Buyers") challenge the constitutionality of federal criminal statutes making it unlawful for federal firearms licensees ("FFLs") to sell handguns and handgun ammunition to people under 21 years of age, 18 U.S.C. §§ 922(b)(1), (c), and federal regulations implementing those statutory provisions, 27 C.F.R. §§ 478.99(b)(1), 478.124(a), 478.96(b) (together, the "Challenged Laws"). The Prospective Buyers seek a declaratory judgment that the Challenged Laws violate their Second Amendment rights to keep and bear arms, and also violate their Fifth Amendment rights to equal protection of the law. On that basis, the Prospective Buyers also seek to enjoin enforcement of the Challenged Laws by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); Thomas E. Brandon, in his official capacity as the Deputy and Acting Director of ATF; and William P. Barr,[1] in his official capacity as Attorney General of the United States (together, the "Government").

The Government moved to dismiss under Rule 12 of the Federal Rules of Civil Procedure. ECF No. 15. The Prospective Buyers and the Government agree there is no dispute of material

---

[1] William P. Barr is now the Attorney General of the United States, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

fact in this case and therefore no need for discovery or a trial, as the suit can be resolved on the legal merits and the briefs. ECF No. 26 at 2. The Prospective Buyers cross-moved for summary judgment under Rule 56. ECF No. 31. Amici parties Brady and the Giffords Law Center to Prevent Gun Violence (together, the "Amici Parties") filed briefs in support of the Government. ECF Nos. 28, 38. For the reasons set forth below, the court will grant the Government's motion to dismiss and deny the Prospective Buyers' motion for summary judgment.

## Background

The Prospective Buyers are two adult citizens under the age of twenty-one. Compl ¶¶ 24, 30. Both Prospective Buyers wish to purchase a handgun for self defense. Id. ¶¶ 27, 34. Each of the Prospective Buyers attempted to purchase handguns and ammunition from local FFLs, but were denied due to their age pursuant to the Challenged Laws. Id. ¶¶ 25, 36. Plaintiffs allege that but for the Challenged Laws, both Prospective Buyers would be permitted to purchase handguns. Id. ¶¶ 24–26, 29, 36–37.

## Statutory Background

Together, the Challenged Laws prevent adults under the age of 21 from purchasing handguns from FFLs. Under 18 U.S.C. § 922(b)(1), it is:

> unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

27 C.F.R. § 478.99(b)(1) contains substantively identical language.[2] 18 U.S.C. § 922(c) provides

---

[2] The regulation provides that:

> A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 18 years of age, and, if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual

2

in relevant part that: "a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises . . . only if the transferee submits to the transferor a sworn statement" affirming "that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age. . . ."

27 C.F.R. § 478.124(a) mandates that "[a] licensed importer, licensed manufacturer, or licensed dealer shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, unless the licensee records the transaction on a firearms transaction record, Form 4473. . . ." 27 C.F.R. § 478.96(b) imposes the same restrictions on out-of-state and mail order sales. Form 4473 requires that an FFL enter a prospective firearm buyer's or transferee's birthdate (Box 7) and describe the type of firearm (Box 16), and states that the information provided "will be used to determine" whether the buyer or transferee is "prohibited from receiving a firearm." ATF, Form 4473, available at https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

### Legislative History

The Challenged Laws arose from a "multi-year inquiry into violent crime that included 'field investigation and public hearings.'" Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 198 (5th Cir. 2012), rehearing en banc denied, 714 F.3d 334 (5th Cir. 2013), cert. denied, 571 U.S. 1196 (2014) ("BATFE") (quoting S. Rep. No. 88-1340, at 1 (1964)). Congress found that young people were responsible for a significant portion of crime nationally. See, e.g., S. Rep. No. 90-1097, at 77 (1968) ("[J]uveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent

---

who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age. . . .

27 C.F.R. § 478.99(b)(1).

3

of [such] total arrests"). Law enforcement submitted "statistics documenting the misuse of firearms by juveniles and minors," which "[took] on added significance when one considers the fact that in each of the jurisdictions . . . the lawful acquisition of concealable firearms by these persons was prohibited by statute," S. Rep. No. 89-1866, at 58–59 (1966), and in light of the "serious problem of individuals going across State lines to procure firearms which they could not lawfully obtain or possess in their own State and without the knowledge of their local authorities," id. at 19. That inquiry also found that "the handgun is the type of firearm that is principally used in the commission of serious crime," and "the most troublesome and difficult factor in the unlawful use of firearms." Id. at 4–7. Indeed, the handgun's "size, weight, and compactness make it easy to carry, to conceal, to dispose of, or to transport," and "[a]ll these factors make it the weapon most susceptible to criminal use." Id.

Congress further found a "causal relationship between the easy availability" of handguns "and juvenile and youthful criminal behavior, and that such firearms have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior." Pub. L. No. 90–351, § 901(a)(6), 82 Stat. 197, 225–226. Congress focused on the "clandestine acquisition of firearms by juveniles and minors," which it found posed "a most serious problem facing law enforcement and the citizens of this country." S. Rep. No. 90-1097, at 79.

Congress "designed" the Challenged Laws "to meet this problem and to substantially curtail it." Id. But Congress did not intend to enact a whole cloth ban on minors owning handguns: "[A] minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. No. 89-1866, at 58–59. Minors, therefore,

4

could possess handguns if their parents deemed them responsible enough to do so. "At the most," the Challenged Laws "cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. 12279, 12309 (1968) (statement of Sen. Thomas J. Dodd, Chairman, Sen. Subcomm. on Juvenile Delinquency).

### History of Age-Based Firearms Regulations

Legislatures enacted age-based restrictions on firearm purchases, use, and possession before the Challenged Laws, however. Over the course of the nineteenth and early twentieth century, many states enacted restrictions on gun ownership and use by certain categories of people for public safety reasons—including those under a certain age. By the 1920s, roughly half of the states had set 21 as the minimum age for the use and possession certain firearms. See ECF No. 16-2 (collecting statutes). "Like the federal legislation that followed, state regulations sometimes reflected concerns that juveniles lacked the judgment necessary to safely possess deadly weapons, and that juvenile access to such weapons would increase crime." United States v. Rene E., 583 F.3d 8, 14 (1st Cir. 2009). Indeed, "a number of states enacted similar statutes prohibiting the transfer of deadly weapons—often expressly handguns—to juveniles." Id.

Courts of the time upheld these types of laws. See, e.g., Parman v. Lemmon, 244 P. 227, 228 (Kan. 1925) (observing that "many of the states" had laws similar to that making it a misdemeanor to "sell, trade, give, loan or otherwise furnish any pistol, revolver or toy pistol . . . to any minor" as "protective laws enacted to prevent occurrences" like the accidental shooting in that case); State v. Quail, 92 A. 859, 859 (Del. Gen. Sess. 1914) (refusing to dismiss indictment based on statute criminalizing "knowingly sell[ing] a deadly weapon to a minor other than an ordinary pocket knife"); State v. Allen, 94 Ind. 441, 442 (1884) (reversing dismissal of indictment for

5

"unlawfully barter[ing] and trad[ing] to . . . a minor under the age of twenty-one years, a certain deadly and dangerous weapon, to wit: a pistol, commonly called a revolver"); Tankersly v. Commonwealth, 9 S.W. 702, 702 (Ky. 1888) (indictment for selling a deadly weapon to a minor); State v. Callicutt, 69 Tenn. 714, 716–17 (1878) (affirming that "the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor," were "not only constitutional as tending to prevent crime but wise and salutary in all its provisions," and denying that "the right 'to keep and bear arms' . . . necessarily implies the right to buy or otherwise acquire [arms], and the right in others to give, sell, or loan to him"); Coleman v. State, 32 Ala. 581, 582–83 (1858) (affirming conviction under statute "mak[ing] it a misdemeanor to 'sell, or give, or lend, to any male minor,' a pistol").

Similarly, legal scholars of the time accepted that "the State may prohibit the sale of arms to minors." Thomas M. Cooley, Treatise on Constitutional Limitations 740 n.4 (5th ed. 1883); see also District of Columbia v. Heller, 554 U.S. 570, 616–18 (2008) (describing Professor Cooley's work as "massively popular" and citing it as persuasive authority on Founding-era attitudes on the Second Amendment). Professor Cooley also recognized that "the want of capacity in infants" could justify "a regulation . . . restricting their rights [and] privileges" as a class. Cooley, supra, at 486. And evidence suggests that full adulthood, at the time of the Founding, was not reached until age 21. William Blackstone, 1 Commentaries On The Laws Of England 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years . . . who till that time is an infant, and so styled in law."); *Infant*, Black's Law Dictionary 847 (11th ed. 2019) (legal infancy lasts until age 21) (citing sources from 1878, 1899, and 1974).

## Standards of Review

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. "For purposes of Rule 12(b)(6), the legislative history of

6

an ordinance is not a matter beyond the pleadings but is an adjunct to the ordinance which may be considered by the court as a matter of law." Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995), vacated on other grounds, 517 U.S. 1206 (1996), readopted, 101 F.3d 325 (4th Cir.1996), cert. denied, 520 U.S. 1204 (1997). "In addition, a court may take judicial notice of matters of public record in considering a motion to dismiss." Lewis v. Newton, 616 F. App'x 106, 106 (4th Cir. 2015).

Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## Discussion

### I. The Challenged Laws Do Not Violate the Second Amendment

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court determined that the Second Amendment protects an individual "right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635 (emphasis added). The Court held that the District of Columbia's ban on possession of handguns in the home and its requirement that all firearms in the home be stored in a manner that rendered them inoperable for immediate self-defense were unconstitutional. Id. The Supreme Court noted, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Id. at 626. The Court provided a non-"exhaustive" list of "presumptively lawful regulatory measures," including "longstanding prohibitions" on firearm possession by certain groups of people, and "laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626–27 & n.26. The Court "made it clear in Heller that

7

[its] holding did not cast doubt" on such measures and "repeat[ed] those assurances" in McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) (plurality).

The United States Court of Appeals for the Fourth Circuit applies a two-part test in Second Amendment claims. "The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010) (quotation marks omitted). "This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid." Id. (citations omitted). If the Second Amendment applies, courts apply "an appropriate form of means-end scrutiny." Id. "Heller left open the issue of the standard of review, rejecting only rational-basis review. Accordingly, unless the conduct at issue is not protected by the Second Amendment at all, the Government bears the burden of justifying the constitutional validity of the law." Id.

While the Fourth Circuit has unfailingly applied a scrutiny analysis, courts "are at liberty to" avoid ruling on the first prong of the Chester test, and "assume that a challenged statute burdens conduct protected by the Second Amendment and focus instead on whether the burden is constitutionally justifiable." United States v. Hosford, 843 F.3d 161, 167 (4th Cir. 2016). Indeed, the Fourth Circuit has found it "prudent" to not rest on the first prong's historical inquiry. Id. (finding it "prudent in this case to assume, without holding, that the federal prohibition against unlicensed firearm dealing burdens conduct protected by the Second Amendment"); Woollard v. Gallagher, 712 F.3d 865, 875 (4th Cir. 2013) ("[W]e are not obliged to impart a definitive ruling at the first step of the Chester inquiry. And indeed, we and other courts of appeals have sometimes deemed it prudent to instead resolve post-Heller challenges to firearm prohibitions at the second step."); United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011) (assuming that the Second

8

Amendment was implicated by a statute prohibiting possession of firearms in national parks and applying intermediate scrutiny).

The Prospective Buyers would have the court ignore binding Fourth Circuit precedent and apply a test focused on "text, history, and tradition" in analyzing Second Amendment claims, rather than strict or intermediate scrutiny. ECF No. 32 at 21–24. The Government, more obliquely perhaps, would have the court avoid discussion of any scrutiny analysis, as evidenced by its briefing. But the Government does not explain why the court should not be bound by the Fourth Circuit's two-part test, and in fact, does not appear to mention it in any of its briefing.

As urged only by the Amici Parties, but bound by precedent, the court follows the Fourth Circuit's two-step framework for analyzing Second Amendment claims. Indeed, the court must do so regardless of whether the parties invoke the standard, and irrespective of the parties' views on whether it was correctly decided. See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., 783 F.3d 976, 980 (4th Cir. 2015) ("A party's failure to identify the applicable legal rule certainly does not diminish a court's responsibility to apply that rule. . . . [I]t is well established that '[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'") (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991)). It bears noting that ten other circuit courts of appeals have applied the same methodology, making the parties' arguments for a change in the law unpersuasive, even if the court were not bound by the Fourth Circuit. See Kolbe v. Hogan, 849 F.3d 114, 132–33 (4th Cir. 2017), cert. denied, 138 S. Ct. 469 (2017) (collecting cases and confirming that "[l]ike most of our sister courts of appeals" the Fourth Circuit applies a two-part analysis); Gould v. Morgan, 907 F.3d 659, 669 (1st Cir. 2018).

9

a.  **The Challenged Laws Are Facially Valid**

"Under the well recognized standard for assessing a facial challenge to the constitutionality of a statute, the Supreme Court has long declared that a statute cannot be held unconstitutional if it has constitutional application." United States v. Moore, 666 F.3d 313, 318 (4th Cir. 2012). Thus, to succeed in a facial constitutional challenge, a movant "must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Because of this stringent standard, a facial challenge is "the most difficult challenge to mount successfully." Id. Courts may dismiss a facial challenge "by reference to the challenged regulation and its legislative history." Educ. Media Co. at Virginia Tech v. Swecker, 602 F.3d 583, 588 (4th Cir. 2010). "And while courts generally engage in [Chester's] two-pronged analysis for facial Second Amendment challenges, [Fourth Circuit] precedent simplifies that analysis for prohibitions deemed 'presumptively lawful' in Heller." Hosford, 843 F.3d at 165.

Applying Heller, the Fourth Circuit has upheld similar age-based restrictions on the sale of firearms. The Fourth Circuit ruled in Hosford that "the prohibition against unlicensed firearm dealing" established by 18 U.S.C. § 922(a)(1)(A) was "a longstanding condition or qualification on the commercial sale of firearms and [] thus facially constitutional." 843 F.3d at 166. "First," the Fourth Circuit explained, "the regulation covers only the commercial sale of firearms." Id. In other words, "[i]t affect[ed] only those who regularly sell firearms" and "explicitly exclude[d] the vast majority of noncommercial sales." Id. "Second, the regulation imposes a mere condition or qualification," and does not prohibit the activity altogether. One of these conditions was age—dealers must "be at least twenty-one years old." Id. Finally, the Fourth Circuit examined whether the regulation was "longstanding," concluding it was because similar regulations were in place at least by 1938. Id. at 166–67. On these grounds, the Fourth Circuit concluded that the facial Second Amendment challenge failed. Id. at 167.

10

Like the provisions at issue in Hosford, the Challenged Laws are facially valid. First, the Challenged Laws concern "only the commercial sale of firearms." Id. at 166. The Challenged Laws only affect purchases from commercial sellers: FFLs. Second, they "impose[] a mere condition or qualification" on handgun sales. Id. The Challenged Laws also do not prevent handgun purchases from non-FFL parties, and alternatively, 18-to-20-year-olds are permitted to receive handguns from their parents. BATFE, 700 F.3d at 190 (citing legislative history); ECF No. 16-1 at 3 (ATF opinion letter stating that "Federal law was not intended to preclude a parent or guardian from purchasing a firearm and placing it in the possession of a minor child or ward.").[3] Moreover, the Challenged Laws do not restrict a buyer once she turns 21. Thus, like the provisions in Hosford, the Challenged Laws are not "so prohibitive as to turn this condition or qualification into a functional prohibition" on the ownership of firearms. 843 F.3d at 166. Applying the final prong of analysis under Hosford, the Challenged Laws reflect "longstanding" prohibitions on the use or possession of handguns by those under a given age. Similar restrictions have been in place and upheld by courts since the nineteenth century. See supra at 5–6 (discussing state statutes and court decisions); BATFE, 700 F.3d at 203 (Restricting "the ability of 18-to-20-year-olds to purchase handguns from FFLs . . . is consistent with a longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety."). Thus, the Challenged Laws are among the "longstanding prohibitions" and "conditions and qualifications on the commercial sale of arms," which the Supreme Court in Heller did not "cast doubt" on. 554 U.S. at 626–27.

---

[3] The court does not intend to call into question the general ban on so-called "straw purchases" of firearms. See generally Abramski v. United States, 573 U.S. 169 (2014). Moreover, the court finds no conflict between the ban on straw purchases and this parental exception: both are equally supported by the legislative history of the Challenged Laws. See id. at 181–87 (discussing text and legislative history of Gun Control Act of 1968, and noting that Congress did not prohibit giving firearms as gifts).

11

### b. The Challenged Laws Are Valid as Applied to the Prospective Buyers

Yet the Fourth Circuit has recognized that even if a statute is facially constitutional, "the phrase '*presumptively* lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations' could be unconstitutional in the face of an as-applied challenge." Chester, 628 F.3d at 679 (quoting United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010)) (emphasis in Chester). The court, therefore, also analyzes the Prospective Buyers' claims on an as-applied basis.

#### i. The Challenged Laws Are Outside the Scope of the Second Amendment

First, the court examines whether the Challenged Laws are outside the scope of the Second Amendment. The court looks to historical understanding to determine the scope of the Second Amendment. See Heller, 554 U.S. at 577–628 (interpreting Second Amendment based on historical traditions); Masciandaro, 638 F.3d at 470 ("[H]istorical meaning enjoys a privileged interpretive role in the Second Amendment context."). The Fifth Circuit in BATFE analyzed this issue, recounting much the same history as the parties in this case, and ruled that the Challenged Laws do not impact Second Amendment rights. BATFE, 700 F.3d at 203–04. First, "[t]he historical record shows that gun safety regulation was commonplace in the colonies, and around the time of the founding, a variety of gun safety regulations were on the books; these included . . . laws disarming certain groups and restricting sales to certain groups." Id. at 200. "Noteworthy among these revolutionary and founding-era gun regulations are those that targeted particular groups for public safety reasons." Id. "In the view of at least some members of the founding generation, disarming select groups for the sake of public safety was compatible with the right to arms specifically and with the idea of liberty generally." Id. Ultimately, the Fifth Circuit found that "the ability of 18-20-year-olds to purchase handguns from FFLs . . . falls outside the Second Amendment's protection," based on an examination of the historical record. Id. at 203;

12

see also Rene E., 583 F.3d at 16 ("[T]he founding generation would have regarded" laws prohibiting the possession of handguns by those under 18 with certain exceptions, "as consistent with the right to keep and bear arms."). The court concludes that based on the reasoning in BATFE, the historical record of legislation, court decisions, and scholarship summarized above, the Challenged Laws do not implicate Second Amendment rights.

### ii. The Challenged Laws Survive Intermediate Scrutiny

The Fifth Circuit proceeded, however, to the second step of its analysis, "in an abundance of caution" given the "institutional challenges" of a definitive historical review. Id. at 204; see also Hosford, 843 F.3d 161, 167 (finding it "prudent" to proceed to scrutiny analysis). The court follows the Fifth Circuit here. Thus, the court analyzes whether the Challenged Laws survive the "appropriate form of means-end scrutiny." Chester, 628 F.3d at 680.

First, the court holds that intermediate scrutiny applies to the Challenged Laws: even if they affect rights in the scope of the Second Amendment, they do not burden a "core" Second Amendment right. For claims brought under the Second Amendment, the appropriate "level of scrutiny . . . depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." Id. at 682–83. In Masciandaro, the Fourth Circuit held that laws burdening "core" Second Amendment conduct receive strict scrutiny, while less severe burdens receive only intermediate scrutiny. 638 F.3d at 471. The Fourth Circuit noted that core Second Amendment conduct includes the "fundamental right to possess firearms for self-defense within the home. But a considerable degree of uncertainty remains as to the scope of that right beyond the home. . . ." Id. at 467 (emphasis added). "[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self defense." Id. at 470 (The "longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable."). Thus, "less severe burdens on the right, laws

13

that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified." Id. (quoting Chester, 628 F.3d at 682).

Prohibiting adults between the ages of 18 and 20 from buying handguns from an FFL does not implicate a core Second Amendment right. Unlike the statutes at issue in Heller, the Challenged Laws do not "amount[] to a prohibition" of the possession "of an entire class of 'arms.'" Heller, 554 U.S. at 628. Indeed, the Prospective Buyers are not prohibited from possessing handguns. BATFE, 700 F.3d at 207. And like those laws in Hosford, the Challenged Laws only implicate commercial transactions: "conduct occurring outside the home." 843 F.3d at 168 (applying intermediate scrutiny to prohibition against unlicensed firearm dealing).

While the Prospective Buyers argue that they are prevented from purchasing "new" handguns (ECF No. 32 at 26), they cite no decision finding a meaningful distinction between new and used handguns, or factory-new and new-in-box handguns, for purposes of determining a Second Amendment right. Cf. Heller, 554 U.S. at 627 (The Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."). Nor do the Prospective Buyers rebut the Government's claims that the Prospective Buyers could receive similar handguns from their parents or in sales by non-FFL parties. Ultimately, the Prospective Buyers concede issues showing that the Challenged Laws impose a narrow and limited burden. The Challenged Laws only (1) prevent the Prospective Buyers from purchasing (but not possessing) one type of firearm, factory-new handguns; (2) from one type of firearms seller, FFLs; and (3) for a limited period of time, from ages 18 to 20. Accordingly, the Challenged Laws are limited enough to avoid strict scrutiny. BATFE, 700 F.3d at 205 ("Unquestionably, the challenged federal laws trigger nothing more than 'intermediate'

scrutiny . . . The narrow ambit of the ban's target militates against strict scrutiny.").

Intermediate scrutiny requires the Government to show "that there is a reasonable fit between the challenged regulation and a substantial governmental objective." Chester, 628 F.3d at 683 (internal quotation marks omitted). Intermediate scrutiny does not demand that the challenged law "be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question." See Masciandaro, 638 F.3d at 474. Rather, there must be "a fit that is 'reasonable, not perfect.'" See Woollard, 712 F.3d at 878 (quoting United States v. Carter, 669 F.3d 411, 417 (4th Cir. 2012)).

To begin, Congress has an "interest in the protection of its citizenry and the public safety is not only substantial, but compelling." Kolbe, 849 F.3d at 139; Masciandaro, 638 F.3d at 473 ("Although the government's interest need not be 'compelling' under intermediate scrutiny, cases have sometimes described the government's interest in public safety in that fashion.") (collecting cases).

The court agrees there is a "reasonable fit" between the Challenged Laws and Congress's interest in the protection of its citizenry and the public safety. The Fifth Circuit's rationale in BATFE is persuasive. The text of the statute and legislative history make clear that "Congress designed its scheme to solve a particular problem: violent crime associated with the trafficking of handguns from FFLs to young adults." BATFE, 700 F.3d at 207–11 (collecting and discussing legislative history); supra at 3–5 (recounting legislative history and government findings). The restriction imposed by the Challenged Laws is also sufficiently narrow. The Prospective Buyers have free reign to buy a handgun once they are 21. In the meantime, the Challenged Laws permit young people, via their parents, to possess handguns. BATFE, 700 F.3d at 209 (describing the Challenged Laws as "a calibrated, compromise approach"). "At the most," the Challenged Laws

15

"cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. 12279, 12309 (1968) (Sen. Dodd). Cf. Heller, 554 U.S. at 635 (strongest Second Amendment right applies to "law-abiding, responsible citizens") (emphasis added).

In sum, the parties persuasively argue that the Challenged Laws survive intermediate scrutiny. While the Prospective Buyers offer policy disagreements with Congress's conclusions and reasoning, ECF No. 32, that is not for courts to decide. Rather it is "precisely the type of judgment that legislatures are allowed to make without second-guessing by a court." Kolbe, 849 F.3d at 140 (upholding state ban on assault weapons and high-capacity magazines in spite of arguments against legislative rationale). Indeed, the Fourth Circuit has urged courts to approach Second Amendment claims with particular caution, giving due respect to the limits of their Article III powers. Masciandaro, 638 F.3d at 475 ("To the degree that we push the right beyond what the Supreme Court in Heller declared to be its origin, we circumscribe the scope of popular governance, move the action into court, and encourage litigation in contexts we cannot foresee. This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights.").

## II. The Prospective Buyers' Due Process Claims Fail

The Prospective Buyers also argue that the Challenged Laws violate their right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment to the United States Constitution. Compl. ¶ 43; Count II.

Rational basis applies to the Challenged Laws' age classification. "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification

16

Case 3:18-cv-00103-GEC   Document 48   Filed 10/04/19   Page 16 of 18   Pageid#: 616

impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976) (footnotes omitted). As held above, the Challenged Laws do not impermissibly interfere with Second Amendment rights, and "age is not a suspect classification." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000); BATFE, 700 F.3d at 211–12 (applying rational basis to equal protection claim regarding the Challenged Laws). The Prospective Buyers argue that youth should be a suspect class, but have not convinced this court that it should be the first to hold as much. See, e.g., Am. Entertainers, L.L.C. v. City of Rocky Mount, 888 F.3d 707, 723 (4th Cir. 2018) (no suspect classification in limiting 18-to-20-year-olds' ownership of adult businesses).

"[B]ecause an age classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Kimel, 528 U.S. at 83–84 (internal quotation marks omitted). Accordingly, "the government may 'discriminate on the basis of age without offending' the constitutional guarantee of equal protection 'if the age classification in question is rationally related to a legitimate state interest.'" BATFE, 700 F.3d at 212 (quoting Kimel, 528 U.S. at 83–84).

The Prospective Buyers' Equal Protection claim fails as a matter of law. The court holds that Congress had a rational basis for regulating adults over 21 differently from adults under 21 for the same reasons the Challenged Laws survive intermediate review. BATFE, 700 F.3d at 212 (holding that age restrictions in the Challenged Laws satisfy rational basis review); Am. Entertainers, L.L.C., 888 F.3d at 723 (local ordinance barring 18-to-20-year-olds from owning adult businesses was rationally related to prevention of underage drinking "given alcohol's availability at most such venues"). Further, the Amici parties highlight substantial evidence

17

Case 3:18-cv-00103-GEC   Document 48   Filed 10/04/19   Page 17 of 18   Pageid#: 617

supporting Congress's decision to draw the line at age 21. ECF Nos. 28 (neurological and social science research), 38 (similar). Congress's fact-finding, thus, could "reasonably be conceived to be true." Kimel, 528 U.S. at 83–84.

The Prospective Buyers allege—and the court has no reason to doubt—that they are law-abiding, responsible, and capable adults, rendering the Challenged Laws over-inclusive. But that does not mean that the Challenged Laws violate the Prospective Buyers' rights to Equal Protection. Kimel, 528 U.S. at 83 ("The rationality commanded by the Equal Protection Clause does not require . . . razorlike precision . . . Under the Fourteenth Amendment, a State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests . . . That age proves to be an inaccurate proxy in any individual case is irrelevant.").

## Conclusion

For the reasons stated, the court grants the Government's motion to dismiss (ECF No. 15) and denies the Prospective Buyers' motion for summary judgment (ECF No. 31). The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 4th day of October, 2019

_____
Senior United States District Judge